# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 885 | **DATE** | 11/1/2004 |
| **CASE TITLE** | Ammons-Lewis vs. Metropolitan Water | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants the District's motion for summary judgment (36-10 as to counts two, three and four but denies the motion as to counts one and five. The date for filing the final pretrial order (to include motions in limine and responses) is extended to 11/29/04. The case is set for a final pretrial conference on 12/2/04 at 3:00 p.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 04 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 51 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DELORES AMMONS-LEWIS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>METROPOLITAN WATER )<br>RECLAMATION DISTRICT OF )<br>GREATER CHICAGO, )<br>)<br>)<br>Defendant. ) | Case No. 03 C 0885 |

MEMORANDUM OPINION AND ORDER



MATTHEW F. KENNELLY, District Judge:

Delores Ammons-Lewis has sued her employer, the Metropolitan Water Reclamation of Greater Chicago ("the District"), for gender discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, denial of equal protection under 42 U.S.C. § 1983, failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12101, and violation of the Family and Medical Leave Act, 29 U.S.C. § 2601. The District has moved for summary judgment on all five counts of Ammons'[1] amended complaint.

For the reasons stated below, the Court grants summary judgment in the District's favor on Ammons' claims under the ADA and the FMLA and her claim of retaliation but denies

---

[1] Plaintiff's counsel refers to the plaintiff as "Ammons" in her response to the District's motion, so we will do the same.

1

summary judgment on Ammons' Title VII sexual harassment claim and her § 1983 claim.

## Facts

Ammons began working for the District in 1986. This lawsuit is one of several that she has pursued against her employer over the past eighteen years. The principal focus of the present lawsuit is the sexually charged workplace Ammons claims exists at the District's Calumet plant, where she has worked since July 1998. She asserts that the District condoned the presence of sexually offensive materials and the use of sexually explicit speech throughout the plant, and that it failed to respond to sexual harassment and an assault she endured at the hands of co-worker Willie Davis on December 12, 2001. After complaining about the Davis incident and about other incidences of sexual harassment in the plant, Ammons claims, her supervisors retaliated against her in various ways.

Several months after the incident with Davis, Ammons claims to have had serious back pain resulting from the assault, and she requested disability leave. The District would not allow her to take disability leave because the incident was classified as an "accident," which allegedly rendered Ammons ineligible for disability leave. Ammons then tried to take leave under the FMLA but was again denied. She claims that the denial of leave violated her statutory rights under the FMLA.

Ammons also asserts that the District violated her statutory rights under the Americans with Disabilities Act. Ammons is allergic to Polymer, a chemical used in the Calumet plant, and she claims this is a disability protected under the ADA. The District agreed to provide her with protective gear to wear whenever she was working with Polymer. Ammons claims that despite making this promise, the District never gave her the proper gear and thus failed to accommodate

her disability.

## Discussion

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party and draws reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### *1.  Count 1: gender discrimination and hostile work environment*

In Count 1 of her amended complaint, Ammons charges the District with gender discrimination and sexual harassment in the form of a hostile work environment. Both parties appear to agree, however, that the real claim is one of hostile work environment; Ammons did not address the gender discrimination claim in her amended response to the District's amended motion for summary judgment. *See* Pl. Am. Resp. at 14-20.

To sustain a hostile work environment claim based on sexual harassment, Ammons must provide evidence from which a reasonable fact finder could conclude that she was (1) subjected to unwelcome harassment (2) based on her gender (3) which unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment, and (4) there is a basis to impose liability on the District. *See, e.g., Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). The offensiveness of the work environment is evaluated both from the subjective standpoint of the plaintiff and from the objective standpoint of a reasonable person in the plaintiff's position. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). In determining whether the work environment was hostile, the factors considered

include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work environment." *Id.* at 788 (internal citation omitted).

Ammons bases her hostile work environment claim on many allegations of harassment, including pornography and other explicit materials that she says were common in the workplace; sexually offensive comments by supervisors and co-workers; sexual harassment and assault by a co-worker; and sexually offensive jokes and articles displayed on the "Wall of Fame" in the workplace kitchen area.[2] Taking these allegations as true, Ammons suffered from more than merely "isolated incidents" of sexual harassment, as the District argues. *Id.* at 788. The evidence of harassment provided by Ammons would permit a reasonable jury to find that she subjectively experienced her work environment as abusive and that a reasonable person in her position would have perceived the environment as abusive.

In seeking summary judgment, the District argues that even if Ammons' work environment was hostile, it cannot be held liable because the harassment was committed by co-workers, not supervisors, and it took prompt remedial action when it received complaints of harassment by co-workers. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). An employer is liable for the actions of co-workers only if it was negligent in discovering or remedying the harassment. *Parkins*, 163 F.3d at 1032. In this case, there is

---

[2]The District argues that some of Ammons' allegations are based on events that occurred more than 300 days prior to her EEOC charge and that her claim is time barred to the extent that it arises from those events. Def. Mem. at 2. The allegations Ammons presents, however, are sufficient to permit a claim that she suffered from a continuing violation. The earlier incidents of harassment she cites appear to "lay the foundation" for subsequent incidents and therefore "could arguably be considered as part of a single, continuing course of harassment." *Haugerud v. Amery School Dist.*, 259 F.3d 678, 690 (7th Cir. 2001) (internal citations omitted).

4

evidence the District was aware of the alleged harassment based on Ammons' many written and oral complaints to supervisors. *See* Pl. Am. Resp. at 17. At issue, therefore, is the sufficiency of the District's response to Ammons' complaints.

Under Title VII, an employer's response to allegations of harassment is sufficient if it is "reasonably calculated to prevent further harassment." *Longstreet v. Ill. Dep't of Corrections*, 276 F.3d 379 (7th Cir. 2002). Ammons provides evidence that the District failed to respond to her complaints about the harassment from Davis. Pl. Am. Resp. to Def. 56.1(a)(3) Stmt. ¶ 59. She also states that the District knew of the sexually offensive materials in the workplace and did nothing about the situation for years. Ammons Decl. ¶¶ 17, 29-30, 36. The District disputes Ammons' allegations that it did not respond promptly to her complaints. It notes that in 2002, it hired an independent investigator to look into allegations of sexual harassment (she finished her report in July 2003), Def. 56.1(a)(3) Stmt. ¶ 168, and that as of 2003, Ammons' workplace has been free of offensive materials. *Id.* ¶ 71. A reasonable fact finder, however, could conclude that by waiting until 2003 to take remedial action, the District failed to take "prompt remedial action," as required by Title VII. *Morgan*, 536 U.S. at 116. Moreover, Ammons provides evidence that the investigation was incomplete, *see* Pl. Resp. at 13, and that the District did not adequately respond to the harassment she endured from Davis and other co-workers and supervisors. *Id.* at 18. In sum, both the sufficiency and the timeliness of the District's response to Ammons' complaints of harassment are genuinely disputed, and as a result summary judgment is inappropriate.

## 2. Count 2: failure to accommodate under the ADA

### a. Actual disability

Ammons asserts that she is disabled, that the District was aware of her disability, and that despite this, it failed to provide her with reasonable accommodation, in violation of the ADA.

To establish a prima facie case of failure to accommodate under the ADA, Ammons must first provide evidence from which a reasonable jury could find she suffers from a disability. The ADA defines disability as an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(A). Ammons argues that her allergy to Polymer substantially limits her in the major life activity of breathing. To meet the substantially limiting requirement, Ammons must show that she is either unable to breathe or that she is significantly restricted as to the condition, manner, or duration under which she can breathe as compared to the average person. 29 C.F.R. § 1630.2(j)(1); *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 195 (2002). Clearly, Ammons can breathe; the issue is whether her breathing is significantly restricted.

Ammons provides the Court with medical reports by Dr. Paul Jones of Rush Medical Center who states that she has a severe case of allergic rhinitis, Jones Dep. at 47, and that it is a permanent, though intermittent, condition. *Id.* at 53, 73-75. He says that Ammons sometimes has more discomfort in her breathing than the average person. *Id.* at 53-55. At those times, she experiences symptoms similar to a cold, including nasal congestion, having to breathe through her mouth, and hoarseness. *Id.* at 43, 53. Though uncomfortable, a reasonable jury could not find that these symptoms are a restriction on Ammons' ability to breathe that is sufficiently significant to constitute a disability under the ADA. Dr. Jones testified that Ammons can

6

participate in her normal daily activities and that there are no activities that she is incapable of doing because of her allergies. *Id.* at 56-57.

Ammons attempts to show that her allergy is severe enough to qualify as a disability with evidence of how she feels when her allergy flares up. Pl. Am. Resp. at 23. The Seventh Circuit, however, has made it clear, however, that "intermittent flare-ups" cannot be used to establish that an impairment is a disability under the ADA. *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 952 (7th Cir. 2000); *see also, Emery v. Caravan of Dreams*, 879 F. Supp. 640 (N.D. Tex. 1995) (finding a woman who was asthmatic and is allergic to tobacco smoke not significantly restricted in her ability to breathe despite the fact that she experienced extended wheezing and coughing fits when exposed to smoke). The fact that the Ammons' rhinitis is a permanent condition also does not mean that she suffers from a disability as defined by the ADA. *See, e.g., Palao v. Fel-Pro, Inc.*, 117 F. Supp. 2d 764, 769 (N.D. Ill. 2000) (even if an impairment is permanent, it must still be severe enough or have a long term impact sufficient to substantially limit a major life activity); *Watson v. Hughstone Sports Medicine Hospital*, 231 F. Supp. 2d 1344, 1349 (M.D. Ga. 2002) (plaintiff's allergy to latex, though permanent, is not substantial limitation on her ability to breathe because the long term impact of the allergy is minimal and the discomfort in breathing is minimal as long as exposure to latex is avoided).

In sum, Ammons has not provided this Court with evidence from which a reasonable fact finder could conclude that her allergic rhinitis is an actual disability under the ADA.

b. *"Regarded as" disabled*

Ammons argues that even if she does not have an actual disability, the District has a duty to accommodate her because it regarded her as disabled. The ADA provides that a person who is

7

not actually disabled may be classified as disabled under the statute if the person is "regarded as" disabled by her employer. 42 U.S.C. § 12102(2)(c). There are two ways in which a Ammons could fall within the regarded as disabled category: (1) if the District mistakenly believed that she had an impairment which substantially limited one of her major life activities; or (2) if the District believed that she had an impairment that substantially limited a major life activity, but the impairment was actually non-limiting. *Sutton v. United Airlines* 527 U.S. 471, 489 (1999). It is undisputed that the District believed that Ammons had in impairment in that she was allergic to Polymer; the issue is whether the District believed that her allergy substantially limited her ability to work or breathe (Ammons fails to direct the Court as to which major life activity she says the District perceived her to be substantially limited).

Ammons provides the Court with several documents written by managerial personnel and deposition testimony by the District's EEO manager. This evidence suggests that the District perceived Ammons' allergic rhinitis to be a disability as defined by the ADA. *See* Pl. Ex. 74, P108 (letter from the Chief of Management and Operations stating that the District currently affords Ammons "an ADA accommodation that limits [her] exposure" to Polymer); *see* Pl. Ex. 74, P110 (letter from Director of Personnel to Chief of Management and Operations stating that Ammons was "notified that she was afforded an ADA accommodation"); *see* Pl. Ex 81 (letter from EEO/Training Manager Wilkins to Ammons stating that "the determination of your ADA eligibility and needed accommodations was based on documentation received from you and your medical provider in 1997/98"); *see* Wilkins Dep. at 32 (stating that Ammons' allergy to polymer qualified her to be accommodated under the ADA). A reasonable jury could infer from this evidence that the District regarded Ammons as disabled.

The inquiry does not, however, end there. The District argues that the ADA imposes no legal duty on an employer to accommodate an employee it perceives to be disabled. The Seventh Circuit has so far declined to rule on this issue. *Mack v. Great Dane Trailers*, 308 F.3d 776, 783 (7th Cir. 2002). There is, however, considerable authority from other circuits, and from this District, that employers do not have such a duty. *See Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1231-33 (9th Cir. 2003); *Weber v. Strippit, Inc.*, 186 F.3d 907, 917 (8th Cir. 1999); *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999); *Newberry v. East Texas State Univ.*, 161 F.3d 276, 280 (5th Cir. 1998); *Ross v. Matthews Employment*, No. 00 C 1420, 2000 WL 1644584, *5 (N.D. Ill. Oct. 27, 2000); *Cebertowicz v. Motorola, Inc.*, 178 F. Supp. 2d 949 (N.D. Ill. 2001). Underlying these cases is the notion that an impaired but not disabled person who is believed by her employer to be disabled should not have more rights than an equally impaired person who is not perceived to be disabled:

> The ADA cannot reasonably have been intended to create a disparity in treatment among impaired but non-disabled employees, denying most the right to reasonable accommodations but granting to others, because of their employers' misperceptions, a right to reasonable accommodations no more limited than those afforded actually disabled employees.

*Weber*, 186 F.3d at 917.

Case law on this point is not uniform, however; the First and Third Circuits, as well as some district courts, have ruled that accommodations must be made for employees regarded as disabled. *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 773-74 (3d Cir. 2004); *Katz v. City Metal Co.*, 87 F.3d 26, 33 (1st Cir. 1996); *Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 161 (E.D.N.Y. 2002); *Miller v. Heritage Products, Inc.*, N. 02 C 1345, 2004

9

WL 1087370, *10 (S.D. Ind. Apr. 21, 2004). The central concept in these cases is that people with impairments can be more limited by the attitudes of their employers towards the impairment as by the actual impairment, and that the ADA should protect those with non-disabling impairments from discrimination by employers who mistakenly believe they are disabled. *See Moore*, 221 F.3d at 954 ("The concern, therefore, is that employers will act on a misunderstanding of an individual's impairment with the result that a qualified nondisabled person will be precluded from employment."); *Jacques*, 200 F. Supp. 2d at 168 ("Categorically denying reasonable accommodations to 'regarded as' plaintiffs would allow the prejudices and biases of others to impermissibly deny an impaired employee his or her job ... This is the concern addressed by Congress, but ignored by *Weber*.").

Ammons' case is very different from the cases holding that regarded as plaintiffs have a right to accommodations under the ADA. Ammons has presented no evidence to suggest that the District mistakenly believed she could not perform her job as an operating engineer. Rather, Ammons says she was disabled, she requested accommodation, and the District agreed to provide her with one. The District did not fire, demote, or in any way discriminate against her because of her allergy. Under this set of facts, it would not make no sense to impose a legally enforceable requirement for the District to accommodate her non-existent ADA disability. *See Cebertowicz*, 178 F. Supp. 2d at 953 (stating that employers should not be held liable for failing to accommodate an employee with a non-existent disability, though they may be held liable for discriminating against an employee they mistakenly regard as disabled).

3.  ***Count 3: retaliation under the ADA and Title VII***

The ADA and Title VII make it unlawful for an employer to retaliate against an employee

10

who has engaged in protected activity by making complaints under their provisions. 42 U.S.C. §2000(e); 42 U.S.C. § 12203(a). To sustain her retaliation claim, Ammons may proceed under either the direct or indirect method of proof. Under the direct method, she must provide direct or circumstantial evidence that the employer acted based on a prohibited animus. In this regard, "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Under the indirect method, she must provide evidence that after engaging in protected conduct "'only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing [her] job in a satisfactory manner.'" *See Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 888 (7th Cir. 2004) (quoting *Stone*, 281 F.3d at 644). If Ammons provides such evidence, the District must present evidence of a legitimate reason for the adverse action. If it does so, the burden shifts back to Ammons to show that the District's reason was pretextual. *Id.*

Ammons provides a list of actions that she contends were taken in retaliation for her complaint, first made in mid-December 2001, regarding the alleged assault by Davis (this is how Ammons defines her claim in her response to the District's summary judgment motion, *see* Pl. Am. Resp. at 20-21). She says that she was suspended for five days and escorted from the premises; her performance rating was lowered; she was improperly denied duty disability leave, ordinary disability leave, and FMLA leave; she was unduly exposed to Polymer; she was not provided with promised protective equipment; she was denied transfer to a different and, for her, better position; she was denied the opportunity to return to work from leave; she was denied four

11

weeks of earned vacation; and her health benefits were terminated. *See* Pl. Am. Resp. at 21.

The District's first line of attack on this claim is to argue that the alleged retaliation does not rise to the level of adverse action required to sustain a retaliation claim. Though the requirement of adverse action is in some ways more relaxed in retaliation cases than in discrimination cases, *see Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002), there still must be "a quantitative or qualitative change in the terms or conditions of employment." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). "[T]he employee must complain of some action on the employer's part that causes her to suffer a real harm." *Johnson v. Cambridge Inds., Inc.*, 325 F.3d 892, 902 (7th Cir. 2002). But although several of the matters cited by Ammons might alone be insufficient to give rise to a retaliation claim, if she were able to prove that all or some significant part of the entire constellation of actions she cites were retaliatory, a jury reasonably could find that she had experienced the requisite level of adverse action.

We move on, therefore, to consider whether Ammons can sustain a Title VII or an ADA retaliation claim under either the direct or indirect methods of proof. Under the direct method, the plaintiff must offer either direct or circumstantial evidence of retaliation. "An example of direct evidence would be an employer's admission that an adverse employment action was taken against an employee based solely on an impermissible ground ...." *Dandy v. United Parcel Svc.*, ___ F.3d ___, 2004 WL 2414560 (7th Cir. Oct. 29, 2004). Such evidence is rare, and Ammons has offered none in this case.

"Circumstantial evidence, on the other hand, may come in the form of 'suspicious timing, ambiguous statements oral or written, [or] behavior toward or comments directed at other

12

employees in the protected group ....'" *Id.* (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). In this regard, Ammons has made only an abbreviated argument in her brief, relying largely on her citations to literally dozens of matters referenced in her 720-paragraph Local Rule 56.1(b) statement of additional facts. This is not particularly helpful, but the Court will do the best it can.[3]

First, Ammons says that it is suspicious that supervisor James McCague altered her performance rating on the same day that Ammons called Wilkins to complain about harassment. *See* Pl. 56.1(b) Stmt. ¶¶ 447-62. The Court disagrees; she cites no evidence that McCague was aware of the contact with Wilkins.

Second, Ammons cites supervisors' failure to provide her with protective equipment previously promised to her. *See id.* ¶¶ 610-23, 631, 636-56. But she makes no argument that the timing of this action, vis-a-vis her exercise of protected activity, was suspicious. The failure to provide this equipment might arguably give rise to a claim for violation of the ADA's accommodation requirements (though not in this case, as we have just discussed), but Ammons has cited no evidence indicating that this was done in retaliation for any protected activity on her part.

Third, Ammons says that when she returned from leave on September 4, 2002, barrels of Polymer had been left with their lids off. *See id.* ¶¶ 599-602, 650-51, 654. Ammons points out that she advised supervisors about the barrels and says that nothing was done, but she offers no evidence from which a jury reasonably could find that this was retaliatory for any of her

---

[3] Though Ammons appears to claim that her suspension, along with that of Davis, was retaliatory, she advances no argument in her memorandum indicating that she could sustain such a claim through either direct or indirect evidence. *See* Pl. Am. Resp. 20-22.

13

complaints.

Fourth and finally, Ammons cites the denial of various types of leave after she complained about the Davis incident and (perhaps) other matters. *See id.* ¶¶ 154-55, 274, 427, 661-63, 670-71, 674-81) But again, there is nothing about these events – at least nothing that Ammons cites – from which a reasonable jury could find that District management acted as it did to retaliate against her for making complaints of Title VII or ADA violations.

In sum, there is no direct or circumstantial evidence from which a reasonable jury could find that any of these matters cited by Ammons constituted prohibited retaliation.

On the question of indirect evidence, Ammons cites no comparative evidence – a necessary element of a prima facie case of retaliation under this method – with regard to any of the incidents at issue, with one, or perhaps two exceptions. Ammons claims that Diann Gunn, a coworker who she says was also exposed to pornography at the workplace but did not complain, was transferred to a position that Ammons says she should have gotten because she had more seniority. *See id.* ¶¶ 42-44, 49, 474, 624, 719-20. The position was at the District's Deep Tunnel unit, referred to as "TARP," and it became open sometime in 2002. Ammons says this position would have been ideal for her because Polymer is not used in the TARP unit. However, though Ammons had applied for a similar position in 1998, she did not apply for the position in 2002, evidently because it became open while she was on leave. The District says this is why Ammons did not get the position, and though it acknowledges Ammons had more seniority than Gunn, it says it was not required to fill the job based on seniority. It is unclear whether Ammons can make out a prima facie case with regard to the job transfer – it is doubtful whether she can claim differential treatment under the circumstances – but even if so, she has offered no evidence from

which a jury reasonably could conclude the District's stated reason is pretextual.

Finally, Ammons notes that after the incident with Davis, she was escorted from the premises but Davis was not. *See id.* ¶ 442. This incident, even if retaliatory for Ammons' complaint, does not constitute actionable retaliation under Title VII, as there is no indication that it caused Ammons any real harm or affected her work conditions in any way.

For these reasons, the District is entitled to summary judgment on Ammons' retaliation claim.

### 4. *Count 4: violations of FMLA*

The FMLA entitles an employee to twelve weeks of leave for every twelve months worked for a serious health condition. 29 U.S.C. § 2611(2)(a). In order to qualify for FMLA leave, the employee must have worked a minimum of 1,250 hours in the relevant twelve month period. *Id.* In 2002, Ammons alleges that she was denied leave under FMLA despite the fact she had worked the requisite 1,250 hours.[4]

Ammons requested FMLA leave on June 13, 2002, for back problems stemming from the December 12, 2001 altercation with Davis. The District argues that it was justified in denying FMLA leave because Ammons had not worked 1,250 hours during the period between June 13, 2001 and June 13, 2002. Def. 56.1(a)(3) Stmt. ¶ 136. Ammons admits that she had not worked 1,250 hours during that period but disputes the District's use of June 13 as the correct starting date for testing for eligibility. Ammons argues that the District should have used May 2 as a

---

[4]In her amended complaint, Ammons also claimed that the District improperly denied her FMLA leave in November 2002. She later dropped that claim. Def. 56.1(a)(3) Stmt. ¶ 154 ("Plaintiff does not allege an improper denial of FMLA leave in November of 2002." Response: "Admitted."); *see also* Def. Ex. 12.

15

starting point because it was on that date that the District became aware that she had an FMLA qualifying injury. Pl. 56.1(b) Stmt. ¶ 669. Using May 2 as a starting point, Ammons satisfied the 1,250 hour requirement.

After she was denied FMLA leave, Ammons complained to the Department of Labor. The Department of Labor completed an investigation of the matter and found that the District improperly denied Ammons' first leave request because it should have used May 2 as a starting point for testing eligibility. Pl. Ex. 83.

Though the Department of Labor report may create an issue of fact as to whether Ammons' first leave request was improperly denied, the District is nonetheless entitled to summary judgment, because Ammons cannot show that she suffered any recoverable damages because of the denial. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89-90 (2002). Ammons claims that she suffered emotional distress from the denial. Pl. 56.1(b) Stmt. ¶ 684. The FMLA, however, does not permit recovery of damages for emotional distress. *Ragsdale*, 535 U.S. at 89-90; *Graham v. State Farm Mutual Ins.*, 193 F.3d 1274, 1284 (11th Cir. 1999). She also claims to have suffered monetary losses because she was forced to take a medical leave of absence after being denied FMLA leave, during which her health benefits were cut off and she was forced to pay over $5,000 in out-of-pocket medical expenses. Pl. Am. Resp. at 25. Although the FMLA does provide for compensatory damages for lost employment benefits, 29 U.S.C. § 2617(a)(1)(A), Ammons' medical expenses are not recoverable, for several reasons. First, Ammons has failed to provide any documentation of the alleged medical costs she incurred. *See Cianci v. Pettibone Corp.*, 152 F.3d 723, 728-29 (7th Cir. 1998) (an employee failed to show she suffered any loss as a result of being denied FMLA benefits, partly because the

employee provided no support in the record for her claimed monetary damages). Second, Ammons has not provided evidence from which a jury reasonable could find that these expenses were caused by a FMLA violation. Even if Ammons had been granted FMLA leave, she would have lost her insurance coverage. Def. 56.1(a)(3) Stmt. ¶ 156; *see also* Pl. Ex. 83 (Dept. of Labor found that Ammons "failed to disclose evidence of any loss of benefits under the FMLA"). Finally, Ammons did not lose any vacation time or paid leave as a result of being denied FMLA leave. Def. 56.1(a)(3) Stmt. ¶¶ 137 (even if Ammons had been granted the FMLA leave, it would have been unpaid because she had already exhausted her paid leave). Ammons argues that she did lose vacation time due to the claimed FMLA violation, Pl. Am. Resp. at 25, but she cites to no supporting evidence in the record for this claim. *See Cianci*, 152 F.3d at 729 (a plaintiff must provide evidence in the record that she is entitled to relief under the FMLA in order to avoid summary judgment).

In sum, even if Ammons could show that the District violated the FMLA, she cannot recover on her FMLA claim because she has not shown that she suffered from any damages. *Graham*, 193 F.3d at 1284.

### 5. *Count 5: section 1983 claim*

Ammons argues that the harassment committed by the employees of the District is attributable to the District itself and gives rise to a claim under 42 U.S.C. § 1983 for violation of her right to equal protection. Under section 1983, a governmental entity is liable only if the constitutional deprivation resulted from a "policy or custom" of the entity. *E.g., Bohen v. City of East Chicago*, 799 F.2d 1180, 1189 (7th Cir. 1986) (internal citation omitted). One method under which Ammons can establish § 1983 liability is to show that the harassment she suffered

was part of a "well-settled practice ... even though such a custom has not received formal approval through ... decision making channels." *Id.*; *see Wolf-Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir. 1983). Stated in another way, a government entity can be held liable for even informal actions if these actions "reflect a general policy, custom, or patter of official conduct which even tacitly encourages conduct depriving citizens of their constitutionally protected rights." *Id.*

Ammons has offered evidence, some of it from the District's own investigators, that a custom of harassment existed in the Calumet plant, both among supervisory personnel and lower level employees. Pl. 56.1(b) Stmt. ¶¶ 48-144, 188; Def. Ex. 26. Upper management may not have been aware of every incident of harassment that occurred, but a reasonable jury could find that they knew of the "general picture" of harassment occurring in their Calumet plant. *Bohen*, 799 F.2d at 1189. Though the District disputes the significance and reliability of Ammons' evidence, it is up to the jury to determine whether her evidence is sufficient to give rise to § 1983 liability. *Collins v. Village of Woodridge*, 96 F. Supp. 2d 744, 752 (N.D. Ill. 2000).

## Conclusion

For the foregoing reasons, the Court grants the District's motion for summary judgment [docket no. 36] as to counts two, three, and four but denies the motion as to counts one and five. The date for filing the final pretrial order (to include motions *in limine* and responses) is extended to November 29, 2004. The case is set for a final pretrial conference on December 2, 2004 at 3:00 p.m.

MATTHEW F. KENNELLY
United States District Judge

Date: November 1, 2004

18